County Commissioners — Poor Farms — Sales In the negotiation and sale of the land formerly used by Garfield County as a poor farm, the Board of County Commissioners of such county must follow the procedure set out in 56 O.S. 121 [56-121] -56 O.S. 126 [56-126] (1961). The Attorney General has had under consideration your letter of October 28, 1969, wherein you set out the following: "There is enclosed with this letter a copy of a letter from the Mayor of the City of Enid to the Chairman of the Board of County Commissioners of Garfield County, and copy of a letter from the Board of County Commissioners to the District Attorney, both with reference to a proposed sale by the County to the City of a tract of land formerly used as a County Poor Farm, but no longer used or needed for such purpose. . . . The pertinent statutes seem to be 56 O.S. 1961 Sections 121-126[56-121-126] [56-121] — [56-126], setting forth a procedure for sale of land no longer used or needed for `County Poor Farm' purposes; and 19 O.S. 349 [19-349] (1969), authorizing the County Commissioners to sell and convey lands to any city or town within the county for certain specified purposes." And in connection with these facts you, in effect, inquire as follows: In the negotiation and sale of the land formerly used by Garfield County as a poor farm, must the Board of County Commissioners follow the procedure set out in 56 O.S. 1961 Sections 121-126[56-121-126] [56-121] — [56-126], or may they legally proceed under 19 O.S. 349 [19-349] (1969)? Title 56 O.S. 121 [56-121] (1961), provides: "The board of county commissioners of any county of this state is hereby authorized and empowered to sell and convey any real estate deeded to or held by such county for the purpose of county farms or poor farms, when in the opinion of said board of commissioners such real estate is not needed, is unsuitable or inconvenient for such purposes, such sale to be in the manner hereinafter provided." Title 56 O.S. 122 [56-122] — 56 O.S. 126 [56-126] (1961), provide the manner in which Section 121, supra, will be accomplished. In substance, Section 122 provides for a resolution of the Board of County Commissioners approving the sale of county poor farm property; the publication of the resolution; certifying the resolution to the District Judge who, if sale is for the best interest of the county, directs the sale and appoints three appraisers. Section 123 provides for publication of Notice of Sale. Section 124 requires bids in writing, opening at a meeting of the Board of County Commissioners, and report to District Court for approval and confirmation. Section 125 sets out the Order for executing deed, signatures, acknowledgments and attestation. Section 126 directs disposition of proceeds of sale. Title 19 O.S. 349 [19-349] (1969), was enacted in 1963, and, in relevant part. provides: "The County Commissioners of counties of the State of Oklahoma are hereby authorized and empowered to execute offers to convey lands and to execute deeds of conveyance on such lands as are owned by such counties to the United States of America or any city or town within said county, for a consideration to be determined by such Commissioners, to aid the United States of America or any city or town within the said county in the acquisition of such lands by purchase, condemnation or likewise, required for sites for forest reserves, game presences, national parks, irrigation or drainage projects, or for needful public buildings, and for any other purpose for the United States Government or any city or town within said county. . ." Section 19 O.S. 349 [19-349] above, deals generally with the conveyance of county-owned property for any purpose to any city or town within the county. Sections 121-126 set out specifically the method for the sale of county poor farm property. Title 82 C.J.S., Statutes, Section 369, in part, provides: ". . . Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, according to the authorities on the question, unless it appears that the legislature intended to make the general act controlling; and this is true a fortiori when the special act is later in point of time, although the rule is applicable without regard to the respective dates of passage. "It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to, or qualification of, the general statute, whether it was passed before or after such general enactment." In the case of Reubin v. Thompson, Okl., 406 P.2d 263, in the first paragraph of the syllabus by the Court, we find: "A statute which is enacted for the primary purpose of dealing with a particular subject, and which prescribes the terms and conditions of that particular subject matter, prevails over a general statute which does not refer to the particular subject matter, but does contain language which might be broad enough to cover the subject matter if the special statute was not in existence." It is the opinion of the Attorney General that your question be answered in the following manner: In the sale of the land formerly used by Garfield County as a poor farm the Board of County Commissioners of such county must follow the procedure set out in 56 O.S. 121 [56-121] — 56 O.S. 126 [56-126] (1961). (W. J. Monroe)